# COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

KATHRYN KOCH

v.      Record No. 1833-19-2

CHESTERFIELD-COLONIAL HEIGHTS
 DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
MAY 19, 2020

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

(John G. LaFratta, on brief), for appellant.

(Michael S. J. Chernau, Senior Deputy County Attorney; Rebecca A.
Imholt, Guardian *ad litem* for the minor children, on brief), for
appellee.

Kathryn Koch (mother) appeals the circuit court's orders terminating her parental rights to

three children. Mother argues that the circuit court erred in finding that the evidence was sufficient

to terminate her parental rights because the Chesterfield-Colonial Heights Department of Social

Services (the Department) "did nothing to explore her as an option before moving to terminate her

rights and offered her no services in an attempt to rehabilitate her situation." Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we

summarily affirm the decision of the circuit court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Erick Smith, a/k/a Ra'son Nasir (father), are the biological parents to R.K., X.S., and S.S., who are the subject of this appeal.[2] The Department became involved with the family in the fall of 2012, after father was arrested for physically assaulting mother. At that time, R.K. was two years old, X.S. was a year old, and mother was pregnant with S.S. Mother was emotionally and mentally unable to care for R.K. and X.S., so they lived with a family friend and then with the paternal grandmother in North Carolina. After father was released from incarceration, he lived with the children and the paternal grandmother for a few months until they moved back to Chesterfield County for the birth of S.S. Mother and father had ongoing domestic violence incidents and violated "numerous protective orders," while they continued to live together.

On May 21, 2013, mother and father had a domestic dispute after mother questioned father about marks on R.K.'s body; father assaulted mother, leaving her with a broken arm and

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court also entered orders terminating father's parental rights under Code § 16.1-283(B) and (C)(2). Father appealed the circuit court's ruling. See Smith v. Chesterfield-Colonial Heights Dep't of Soc. Servs., Record No. 1821-19-2.

injuries to her eye and nose. Father was arrested for malicious wounding and subsequently threatened mother. As a result, the Department and mother developed several safety plans. The Department also referred mother for mental health services and short-term crisis intervention services. The Department became increasingly concerned about mother's overuse of pain medication and her mental health and emotional state. In June 2013, mother was hospitalized for psychiatric care. In July 2013, father entered into a plea agreement and pleaded guilty to a reduced charge of assault and battery of a family member; he was sentenced to twelve months in jail, with four months suspended. The Chesterfield County Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary child protective order, adjudicated the children as abused and neglected, and removed the children from the parents' custody.

After the children's removal, the Department offered numerous services to mother, including assistance with transportation. The Department also arranged for random drug tests and supervised visitations between mother and the children. In addition, the Department referred mother for a psychological evaluation. In April 2014, Dr. King, a licensed clinical psychologist and social worker, completed a psychological evaluation for mother. Dr. King concluded that mother was "mentally and generally unstable" and not capable of meeting her children's needs at the time. Although mother completed the psychological evaluation, she did not comply with other services, and she missed several visitation appointments and court hearings.

The Department worked with father, who was compliant with the majority of the services offered, and in July 2015, the Department recommended that the court award joint custody of the children to father and his girlfriend, Emilie Spruill, because Spruill provided financial support, emotional support, and transportation to the family. On August 10, 2015, the JDR court awarded joint legal and physical custody of the children to father and Spruill. Mother was not present at the hearing.

In November 2016, the police were dispatched to a Walgreens store after the manager saw mother and her boyfriend arguing. The manager reported that mother, who was visibly upset, returned to the store to purchase a package of knives and rope. Mother asked how strong the rope was, and when the manager said that it held forty pounds, she replied that it "wasn't strong enough." The manager called the police because he was concerned about mother's well-being and noticed that she wore a house arrest anklet. The police spoke with mother, who admitted that she was "very depressed" but denied any suicidal plans. She indicated that she wanted the knives "in case she wanted to start cutting again." The police contacted Chesterfield Mental Health and the Sheriff's Department that supervised her house arrest.

Unbeknownst to the Department, Spruill and father later ended their relationship "due to domestic issues," and Spruill petitioned the JDR court to be relieved of custody, which the JDR court granted on April 10, 2017. On August 27, 2017, father and Spruill were involved in a "road rage incident."[3] Father was directly indicted and arrested in December 2017. After father was arrested, mother cared for the children.

When the Department learned of father's arrest and that mother was caring for the children, the Department petitioned to remove the children and placed them in foster care. On December 11, 2017, the JDR court adjudicated that the children were abused or neglected. On February 5, 2018, the JDR court entered a dispositional order with concurrent goals of relative placement and adoption. Mother did not appeal the ruling.

When the children entered foster care the second time, the Department did not pursue a goal of return home because it previously had attempted to return the children home and that goal was unsuccessful. Therefore, the Department did not offer services to mother. The

---

[3] The children were not present during the incident.

Department was aware that mother had requested for "somebody to come assess her situation." The Department, however, had already offered her services previously, and she had not complied with the Department's efforts to reunite her with the children.

The Department investigated relative placements, including the maternal and paternal grandmothers. The maternal grandmother did not want to be considered a relative placement, and the paternal grandmother was not approved through the Interstate Compact on the Placement of Children. When the Department determined that relative placement was not an option, it amended the foster care goal to adoption. On October 1, 2018, the JDR court approved the foster care goal of adoption for the children; the parents did not appeal the permanency planning order. At the recommendation of the children's therapists, the Department ended all contact between the children and the parents.

On April 15, 2019, the parties appeared before the JDR court, which ordered a drug test for both parents. Mother tested positive for alcohol and buprenorphine.[4] On the same day, the JDR court terminated mother's parental rights. Mother appealed the JDR court's ruling.

On November 7, 2019, the parties appeared before the circuit court. The Department presented evidence about the children and their well-being. The social worker described all three children as "very bright," but the children, especially R.K. and X.S., also had displayed anger, aggression, and tantrums. The social worker testified that R.K., who was almost ten years old, "struggle[d] the most of all three children." R.K. had "tantrums" that escalated into self-harming behavior, property destruction, or physical aggression toward his siblings or the foster parents. He had been admitted to a residential treatment facility, where he received individual counseling, group counseling, and medication management. R.K. reported to his counselor that father had

---

[4] In contrast, father tested negative for drugs and alcohol.

- 5 -

hit him with an open hand and belt "on multiple parts of his body," and R.K. had seen father hit and kick mother, as well as threaten to kill her with a knife.[5] R.K. was released from the facility approximately one month before the circuit court hearing and was receiving outpatient therapy and medication management.[6]

X.S., who was almost nine years old, received outpatient therapy, medication management, and in-home counseling services. S.S., who was six years old, also received outpatient counseling and medication management. X.S. and S.S. had improved behaviorally since entering foster care.

Dr. Eric Freeman, the children's pediatrician, first started treating them when they were in the custody of mother and father. The biggest concerns for Dr. Freeman had been the children's behavior and chronic anemia. To address the behavioral concerns, Dr. Freeman referred R.K. and X.S. for psychological evaluations; the children completed the evaluations, but the parents did not follow through with the recommendations. To address the anemia, Dr. Freeman prescribed an iron supplement for the children. The parents were not always compliant with the children's medication or nutrition; however, once the children entered foster care, Dr. Freeman noticed that the "anemia issues almost self-corrected without medical management."

At the conclusion of the Department's evidence, mother moved to strike, which the circuit court denied. Mother presented evidence that in addition to the three children who are the subject of this appeal, she had three other children and was pregnant with her seventh child. She

---

[5] Father admitted to hitting R.K. on his hand but nowhere else. Father admitted hitting mother.

[6] The Department was setting up in-home counseling for R.K.

had custody of her youngest child, a one-year-old daughter, who was born substance-exposed.[7] As a result, mother received ongoing child protective services through Henrico County Department of Social Services. Mother testified that she was a "good mother" and did not want her parental rights terminated. At the time of the hearing, mother was unemployed and living with a friend. Mother had lupus and took prescription medicine for "pain management."

At the conclusion of all of the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and (C)(2). This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights because "no investigation of her current circumstances took place and no services were offered to her to attempt to assess or rehabilitate her situation." Mother asserts that the parent-child relationship should have been preserved.

---

[7] Mother's twelve-year-old child had been adopted, and her four-year-old child lived with her and his biological father.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 416 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Services, 12 Va. App. 1178, 1183 (1991)). "[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Farrell, 59 Va. App. at 425 (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

Here, the Department presented extensive evidence regarding the family's history of domestic violence and mother's mental illness. The Department previously had removed the children from the parents' custody and provided numerous services to the parents. Mother, however, did not comply with the services offered and was never in a position to care for the children. The children were returned briefly to father's custody until the Department had to

remove the children again in December 2017, after father was incarcerated for a "road rage incident" against a former domestic partner and mother was not capable of raising the children. Although she claimed to have been in counseling for five years, she never provided documentation of her counseling and admitted that she was only seeing her counselor on an as-needed basis while she was pregnant.

The children had significant needs and were placed in foster care. Once in foster care, the children's anemia improved, and all three children started therapy. R.K. required admittance into a residential treatment facility to meet his behavioral and psychological needs, while X.S. and S.S. received outpatient therapy. This evidence supported the circuit court's finding that the children had suffered from "chronic abuse" in the parents' care, which caused "severe and irreparable harm" to them.

Furthermore, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268. The Department previously had provided services to the parents. Mother did not comply with the services, and although she testified that she was in counseling, she remained emotionally and mentally unstable and tested positive for drug use. Her instability led to the children returning to foster care after father was arrested for the "road rage incident." Contrary to mother's arguments, the Department was not required to provide additional services.

The children had spent a majority of their lives in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of

Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we do not need to consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.